UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>         Plaintiff,<br><br>-against-<br><br>DONALD S. LAGUARDIA, JR.,<br><br>         Defendant,<br><br>LR Global Frontier Master Fund Ltd., et al.,<br><br>         Relief Defendants. | 19-CV-5895 (ALC)(SDA)<br><br>**OPINION AND ORDER** |

**ANDREW L. CARTER, JR., District Judge:**

  Plaintiff Securities and Exchange Commission ("S.E.C." or "Plaintiff") brings this action against Defendant Donald S. LaGuardia Jr. for violations of Section 17(a) of the Securities Act of 1933 (the "Securities Act") 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, and Sections 206(1), 206(2) and 206(4) of the Investment Advisers Act of 1940 (the "Investment Advisers Act"), 15 U.S.C. §§ 80b-6(1), 80b-6(2) and 80b-6(4), and Rule 206(4)-8, 17 C.F.R. § 275.206(4)-8 promulgated thereunder.  (*See generally* Am. Compl., ECF No. 48.) Currently pending before the Court is Plaintiff's unopposed motion for summary judgment as to liability.  (ECF No. 83.)  For the reasons stated below, Plaintiff's motion is **GRANTED**.

## BACKGROUND

### I.   Procedural History

####   A. The Civil Action

Plaintiff initiated this action on June 24, 2019. (Compl., ECF No. 1.) Defendant filed an answer on September 3, 2019. (Answer, ECF No. 9.) The case was stayed by Magistrate Judge Steward D. Aaron during the pendency of the criminal proceedings against Defendant. (ECF No. 31.) An Amended Complaint was filed on July 21, 2021 against LaGuardia and two relief defendants, LR Global Frontier Master Fund Ltd., LR Global Frontier Fund Ltd. (offshore) and LR Global Frontier Fund Ltd. (onshore) (collectively, the "Funds"). (ECF No. 48.) Defendant filed an Amended Answer on September 27, 2021. (ECF No. 58.)

Plaintiff moved for summary judgment as to liability on November 16, 2022. (ECF No. 83.) Defendant filed a letter on December 15, 2023 stating that he would not oppose Plaintiff's motion and that he was pursuing an appeal of his criminal conviction. (ECF No. 92.) On January 24, 2023, Defendant filed a letter indicating that his criminal appeal had been denied and that the criminal judgment against him had been affirmed. (ECF No. 94.)

####   A. The Criminal Action

On December 13, 2019, the U.S. Attorney's Office for the Southern District of New York unsealed an indictment against LaGuardia at *United States v. LaGuardia*, 19-cr-00893 (S.D.N.Y.)(LAK) (the "Criminal Action"). (56.1 Stmt., ECF No. 86 ¶ 16.) LaGuardia was charged with one count of securities fraud, one count of investment adviser fraud, and one count of wire fraud. (*Id.* ¶ 17.)

A trial began in the Criminal Action on November 4, 2020. (*Id.* ¶ 22.) On November 12, 2020, the jury returned a verdict of guilty on all three counts. (*Id.* ¶ 23.) On July 20, 2021,

LaGuardia was sentenced to a term of 60 months imprisonment to run concurrently on all three counts, followed by three years of supervised release. (*Id.* ¶ 25.)

## II. Factual Background

The following undisputed facts are drawn from Plaintiff's Rule 56.1 Statement, the documents relied upon therein, and the Amended Complaint. Because Defendant did not respond to the S.E.C.'s 56.1 Statement, the S.E.C.'s facts are deemed admitted. *See Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) ("[T]he failure to respond [to a Rule 56.1 statement] may allow the district court to accept the movant's factual assertions as true."); *see also* Local Civ. R. 56.1(c).

LaGuardia is a resident of New Jersey and one of the founding members of L-R Managers, an investment advising company. (Am. Compl. ¶ 15.) Beginning in or around 2013 and continuing through May 2017, L-R Managers served as the investment adviser to the Funds. (56.1 Stmt., ECF No. 86 ¶¶ 2–3.) During this time, Plaintiff alleges that LaGuardia perpetrated a scheme to defraud the Funds' investors whereby LaGuardia misappropriated approximately $2.62 million, inflated the Net Asset Value ("NAV") of the Funds through fraudulent accounting devices, and made material misrepresentations to the Funds' investors about audits, expenses, and performance. (*Id.* ¶ 3.)

The fraudulent scheme essentially allowed LaGuardia to use investor money for his own personal gain and for L-R Managers' expenses. LaGuardia and L-R Managers raised money from investors for the purpose of investing in "frontier markets" through the Funds. (*Id.* ¶¶ 32, 100.) These investments were governed by Private Placement Memoranda" ("PPMs") which designated how the invested money would be used and how L-R Managers would be compensated for its management services. (*Id.* ¶ 18.) For instance, the PPMs generally provided that L-R Managers

3

would be entitled to a management fee ranging from 2% to 2.5% per year. (*Id.*) Additionally, the PPMs specifically stated that L-R Managers was responsible for its own overhead costs and expenses. (*Id.*)

Instead of using the money raised from these investors in the designated ways set forth in the PPMs, LaGuardia used the funds to pay L-R Mangers' operational expenses and for his own personal benefit. (*Id.* ¶¶ 6, 42, 49, 98.) For instance, from January 22, 2013 through June 3, 2014, Gavin Wilson invested approximately $1.4 million into the Funds, $1.37 million of which was misappropriated by LaGuardia and L-R Managers. (Palen Decl., ECF No. 84 ¶ 7.) Of this, $300,000 was used to pay for LaGuardia's home renovations. (*Id.*)

Christopher LaCroix, an investor of the Funds, testified that before making his investment, he spoke with LaGuardia several times over the phone and twice in person. (56.1 Stmt., ECF No. 86 ¶ 29.) At these meetings, he was told by LaGuardia and other L-R Manager employees that the Funds would invest roughly 40% to 60% of its assets into "frontier market" stocks, with a maximum position of 10% of its assets in any one stock. (*Id.* ¶ 32.) He was also told that he would be charged a 1% management fee. (*Id.* ¶ 33.) LaCroix testified that he attempted to redeem his shares in June 2017, but that he has never received any money back from the investment. (*Id.* ¶ 30–31.) Another investor—David Harris—testified that he invested $50,000 in the Funds in 2014. (*Id.* ¶ 59.) Harris attempted to redeem his investment in 2017, but never received any money back from his investment. (*Id.* ¶ 60.)

United States Postal Inspector Andrew Trilling testified that when LaCroix made his $2 million investment into the Funds, $89,535.30 went to LaGuardia personally, $156,287.36 went to pay L-R Managers' expenses, $6,600.00 was used to pay LaGuardia's wife's credit card expenses, and $8,100.00 was used towards rent on L-R Managers' corporate apartment. (*Id.* ¶ 62.)

The total management fee for this investment should have totaled $25,038.00 based on the relevant PPM. (*Id.* ¶ 63.)

The jurors also heard testimony from John Schnell, L-R Managers' Director of Operations, who said that LaGuardia directed him to make transfers out of the Funds' accounts to pay for L-R Managers' operating expenses. (*Id.* ¶¶ 38, 41–2, 48–9.) Additionally, Schnell testified that LaGuardia's wife had a L-R Managers credit card that she used for personal expenses, but never repaid L-R Managers for those personal expenditures. (*Id.* ¶¶ 51–2.)

LaGuardia attempted to disguise this misappropriation by inflating the NAV of the Funds by creating a fake receivable "due from" L-R Managers and a promissory note also "due from" L-R Managers. (*Id.* ¶¶ 5, 7–8, 96.) Additionally, the NAV of the Funds was inflated by approximately $830,000 by reclassifying Fund expenses as being receivables from L-R Managers. (*Id.* ¶ 8.) By September 2016, this monthly process artificially inflated the NAV of the Funds by more than $400,000. (Palen Decl., ECF No. 84 ¶ 9.)

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is proper where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994) (citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no issue of material

fact where the facts are irrelevant to the disposition of the matter. *See Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013); *see also Anderson*, 477 U.S. at 248 (holding that a fact is material if it would "affect the outcome of the suit under the governing law"). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal citations and quotation marks omitted).

Defendant concedes that Plaintiff is entitled to summary judgment based on the undisputed facts in this case. (Def.'s Ltr., ECF No. 93.) Nonetheless, the Court is obligated to review the record to ensure that Plaintiffs are entitled to a summary judgment. *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004) ("We hold that Fed. R. Civ. P. 56, governing summary judgment motions, does not embrace default judgment principles. Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law.")

## DISCUSSION

Plaintiff moves for summary judgment as to liability for violations of the Securities Act, the Exchange Act, and the Investment Advisors Act. (*See generally*, Pl.'s Mem., ECF No. 85.) Plaintiff argues that the doctrine of collateral estoppel prevents Plaintiff from re-litigating issues that were resolved in the parallel criminal proceedings. (*Id.*) Having reviewed the SEC's motion for summary judgment and the exhibits submitted in support of the motion, the Court finds that the government has met its burden for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

I.  **Collateral Estoppel**

"Under the doctrine of collateral estoppel, when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *U.S. v. U.S. Currency in Amount of $119,984.00, More or Less*, 304 F.3d 165, 172 (2d Cir. 2002) (citing *Schiro v. Farley*, 510 U.S. 222, 232 (1994)) (internal quotations omitted). The principles of collateral estoppel dictate that a judgment in a prior proceeding bars a party, and those similarly situated, from relitigating an issue if four prerequisites have been satisfied:

> (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.

*N.L.R.B. v. Thalbo Corp.*, 171 F.3d 102, 109 (2d Cir. 1999).

Courts are generally in agreement that "a criminal conviction, whether by a jury verdict or guilty plea, constitutes estoppel in favor of the United States in subsequent civil proceedings as to those matters determined by judgment in the criminal case." *S.E.C. v. Afriyie*, No. 16-CV-2777 (JSR), 2018 WL 6991097, at *4 (S.D.N.Y. Nov. 26, 2018), *aff'd*, 788 F. App'x 59 (2d Cir. 2019) (quoting *United States v. U.S. Currency in Amount of $119,984.00, More or Less*, 304 F.3d 165, 171 (2d Cir. 2002)). "The Government bears a higher burden of proof in the criminal than in the civil context and consequently may rely on the collateral estoppel effect of a criminal conviction in the subsequent civil case." *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 43 (2d Cir. 1986).

## II. The Issues in the Criminal Action and the Instance Civil Action are Identical

In order to determine whether the issues are identical for collateral estoppel purposes, courts routinely compare the criminal indictment with the civil complaint. *S.E.C. v. McGinn, Smith & Co.*, No. 10-CV-457 (GLS)(CFH), 2015 WL 667848, at *9 (N.D.N.Y. Feb. 17, 2015).

Here, the Amended Complaint and the indictment in the criminal action allege identical conduct. The Amended Complaint alleges violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, Section 17(a) of the Securities Act and Sections 206(1), 206(2) and 206(4) of the Investment Advisors Act . (*See generally*, Am. Compl., ECF No. 48 ¶¶ 54–56.) The indictment charges LaGuardia with securities fraud, investment adviser fraud and wire fraud. (Dunnigan Decl., Ex. A, ECF No. 87-1.)

### A. The Securities Act and the Exchange Act

To have violated Section 10(b) and Rule 10b–5 thereunder, defendant must have: "(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." *S.E.C. v. Haligiannis*, 470 F. Supp. 2d 373, 381 (S.D.N.Y. 2007) (quoting *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir.1999)). "A false statement is made with the requisite scienter if it was made with the intent to deceive, manipulate, or defraud." *SEC v. Frohling*, 851 F.3d 132, 136 (2d Cir. 2016) (quoting *SEC v. Obits*, 693 F.3d 276, 286 (2d Cir. 2012)) (internal quotations omitted). The standard for establishing a violation of Section 17(a) of the Exchange Act is "essentially the same…though no showing of scienter is required for the SEC to obtain an injunction under subsections (a)(2) or (a)(3)." *S.E.C. v. Haligiannis*, 470 F. Supp. 2d at 381) (citing *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999)).

The Amended Complaint alleges that Defendant misappropriated roughly $2.62 million of investor funds from the Funds, and then concealed his misrepresentation by artificially inflating the Funds' NAV.  (Am. Compl., ECF No. 48 ¶¶ 1.)  These misappropriated funds were used for LaGuardia's own personal expenses, as well as the management and overhead expenses of his company, L-R Managers.  (*Id.* ¶ 3.)

These issues are identical to the issues that were litigated in Defendant's criminal trial.  Defendant was convicted by the jury of violating the Securities Act and Rule 10(b) promulgated thereunder.  (56.1 Stmt., ECF No. 86 ¶¶ 17, 23), which requires proof of the same elements for a criminal and civil violation.  *SEC v. Haligiannis*, 470 F. Supp. 2d at 382 ("Courts have applied collateral estoppel in the securities fraud context because the elements necessary to establish civil liability under Section 17(a) and 10(b) are identical to those necessary to establish criminal liability under Section 10(b).").

There is ample undisputed evidence in the record satisfying the elements of a Securities Act violation.  At the criminal trial, the prosecution offered proof as to each element of a Securities Act violation, demonstrating that LaGuardia made material misstatements and omissions when he induced people to invest in the Funds without disclosing that a significant portion of the money would not be invested into "frontier markets", as agreed, but would instead be used to pay the operating expenses of L-R Managers and for LaGuardia's own personal benefit.  (56.1 Stmt., ECF No. 86 ¶¶ 26–39, 32–35, 37, 40–45, 48–55, 57, 70, 73.)  The prosecution elicited testimony from Defendant that he knew that money invested into the Funds was not supposed to be used for expenses and that investors would not have invested in the Funds had they known how the Funds were actually managed.  (56.1 Stmt., ECF No. 86 ¶¶ 37, 72.)  During summation, the prosecution also argued to the jury that they should consider how quickly money would leave the Funds'

account to L-R Managers after it had been deposited by investors, showing how much LaGuardia "needed that money" to cover his own and L-R Managers' expenses. (*Id.* ¶ 83.)

Accordingly, the Court finds that the issues between the criminal and civil actions as to securities fraud are identical for the purposes of collateral estoppel.

### B. The Investment Advisers Act

Likewise, the Court finds that the issues litigated in the criminal action as to investment adviser fraud are identical to the S.E.C.'s claims under the Investment Advisor Act. Under Section 206 of the Investment Advisers Act, "[i]t shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly (1) to employ any device, scheme, or artifice to defraud any client or prospective client; [or] (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client ...." 15 U.S.C. § 80b–6 (2000). Because "[f]acts showing a violation of Section 17(a) or 10(b) by an investment adviser will also support a showing of a Section 206 violation", *S.E.C. v. Haligiannis*, 470 F. Supp. 2d at 383 (citing *SEC v. Berger*, 244 F.Supp.2d 180, 188–89 (S.D.N.Y. 2001), the aforementioned facts detailing LaGuardia's conduct in violation of the securities laws, are sufficient to show the identity of issues between the criminal and civil action for investment advisor fraud.

### III. The Government Has Satisfied the Remaining Elements of Collateral Estoppel

The remaining three elements of collateral estoppel are also easily met. Defendant has had a full and fair opportunity to litigate these issues in the Criminal Action—most notably through trial, where he was represented by counsel. *See S.E.C. v. Thompson*, No. 14-CV-09126 (ALC), 2019 WL 4747678, at *6 (S.D.N.Y. Sept. 27, 2019). Defendant was convicted of

violations of the Securities Act, Exchange Act and Investment Advisor Act, and the facts elicited at trial were presented to the jury and necessary to support the final judgment against him.

Accordingly, the Court grants summary judgment in favor of Plaintiff on its claims under the Securities Act, Exchange Act, and the Investment Advisor Act.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is **GRANTED**. Plaintiff is directed to file its motion for issuance of a final judgment within **30 days** of this opinion and order.

The Clerk of Court is respectfully requested to terminate the pending motion at ECF No. 83.

**SO ORDERED.**

**Dated: June 29, 2023**
　**New York, New York**

　　　　　　　　　　　　　　　　　　　　**ANDREW L. CARTER, JR.**
　　　　　　　　　　　　　　　　　　　　**United States District Judge**