## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>        Plaintiff,<br>   v.<br><br>DONALD S. LAGUARDIA, JR.<br><br>        Defendant,<br>  and<br><br>LR Global Frontier Master Fund Ltd., LR Global Frontier Fund Ltd. (offshore), LR Global Frontier Fund Ltd. (onshore),<br><br>        Relief Defendants. | 19-civ.-05895 (ALC/SDA) |

## ORDER APPROVING DISTRIBUTION PLAN, DIRECTING THE TRANSFER OF DISTRIBUTION FUNDS TO THE SEC, AND RELATED TAX OBLIGATION AND ADMINISTRATIVE RELIEF

The Court having reviewed the Motion of Plaintiff Securities and Exchange Commission (the "SEC") for an Order to Show Cause relating to the SEC's proposed distribution plan (the "Plan") for the distribution of all funds under the jurisdiction of the Court in this matter (the "Distribution Funds") (ECF Nos. 107, 109), the accompanying Memorandum in Support of Proposed Distribution Plan (ECF No.108), and the Plan (ECF No. 107-1, attached to this Order as Exhibit 1);

**AND** the Court having entered the requested Order to Show Cause (ECF No. 110);

**AND** the steps set forth in the Order to Show Cause relating to investor notice of the Plan having been completed;

**AND**, pursuant to the Order to Show Cause, the SEC having filed a Notice informing the Court that no objections to the Plan have been submitted as of the date of that Notice, and that

the Plan and the Order to Show Cause have been published in accordance with the Order to Show Cause;

**AND** having considered all arguments presented and for good cause shown;

**IT IS HEREBY ORDERED** that:

1. The Plan (attached hereto as Exhibit 1) is APPROVED;

2. The Plan shall govern the administration and distribution of the Distribution Funds;

3. In accordance with Paragraph 3 of the Plan, and to facilitate the implementation of the Plan, the Clerk is directed to transfer all funds in the Court Registry Investment account under the caption of this case, net any investment costs (the "Distribution Funds"), to the SEC pursuant to directions provided to the Clerk by the SEC;

4. Upon transfer in accordance with paragraph 3, above, and the SEC's request, the Clerk shall provide to the SEC a Case History Report or such other report that contains all information necessary for the Tax Administrator to satisfy its obligations under this Court's Order dated July 5, 2022 (ECF No. 78);

5. This Court's Order dated July 5, 2022 (ECF No. 78), paragraph 2, is modified to direct The Northern Trust Company to transfer any Custody Account Assets that may be discovered, returned, and/or received in the future, to the SEC pursuant to directions provided to The Northern Trust Company by the SEC, for inclusion in the Custodial Fund;

6.    Upon transfer of the Distribution Funds to the SEC, this Court's Order dated July 5, 2022 (ECF No. 78), paragraph 6, is modified to authorize the SEC to approve and arrange payment of all tax obligations owed by the Distribution Funds directly from the Distribution Funds without further approval of this Court.  All such payments shall be reported to the Court in a final accounting.

Dated: December 7, 2023

New York, New York

By: _____

The Hon. Andrew L. Carter, Jr.
U.S. District Court Judge

Exhibit 1 (Plan)

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | |
| **v.** | |
| **DONALD S. LAGUARDIA, JR.** | 19-civ.-05895 (ALC/SDA) |
| **Defendant,** | |
| **and** | |
| **LR Global Frontier Master Fund Ltd., LR Global Frontier Fund Ltd. (offshore), LR Global Frontier Fund Ltd. (onshore),** | |
| **Relief Defendants.** | |

~~(PROPOSED)~~ **DISTRIBUTION PLAN**

## I.    OVERVIEW

1.    This Distribution Plan (the "Plan") was developed by the Securities and Exchange Commission (the "SEC") in accordance with practices and procedures customary in distribution fund administrations. The Plan provides for the distribution of the following assets currently held in the Court Registry Investment System account for the captioned action (the "CRIS Account"):  funds transferred by The Northern Trust Company ("NTC") as custodian for LR Global Frontier Master Fund Ltd., LR Global Frontier Fund Ltd. (offshore), and LR Global Frontier Fund Ltd. (onshore), collectively referenced in this Plan as the Relief Defendants (the "Custodial Fund"); and a Fair Fund created by the SEC pursuant to Section 308(a) of the Sarbanes-Oxley Act, comprised of disgorgement, prejudgment interest, and civil money penalties paid by the respondents in the related administrative proceeding, *Northern Trust Hedge Fund Services LLC, et al.*, Admin. Proc. No. 3-20030 (Sept. 18, 2020) (the "Fair Fund") (collectively, the "Distribution Funds").

2.    The Plan seeks to return the Custodial Fund to the investors whose assets are reflected on NTC's books and records as held by NTC as custodian for the Relief Defendants as of September 30, 2016, as further set forth in the Custodial Fund Plan of Allocation attached as Exhibit A.  The Plan further seeks to distribute the Fair Fund to compensate investors who held investments in the Relief Defendants during the period January 1, 2016 through August 31, 2017, inclusive (the "Relevant Period"), for losses caused by Donald S. LaGuardia, Jr.'s

("LaGuardia" or the "Defendant") misappropriation of funds from the Relief Defendants, as further set forth in the Fair Fund Plan of Allocation attached as Exhibit B.  Based on information obtained by the SEC during its investigation and litigation of this matter, and other information obtained by the Court-appointed distribution agent (the "Distribution Agent"), the SEC has concluded that the Distribution Agent has all records necessary to calculate each investor's interest, if any, in the Custodial Fund, and each investor's harm for the calculation of Fair Fund Distribution Payments.  As a result, the Distribution Funds are not being distributed according to a claims-made process.

3.    The Court holds the Distribution Funds in the CRIS Account and retains jurisdiction over the implementation of this Plan.  Upon Court Order prior to implementation of the Plan, the Clerk shall transfer the Distribution Funds to an SEC-designated account at the U.S. Treasury for distribution pursuant to the Plan.  Upon their transfer, the Clerk of the Court shall provide to the SEC a report for the CRIS Account that reflects all information required by the Tax Administrator to complete its obligations with respect to the Distribution Funds.

## II.    BACKGROUND

### The Captioned Action (the "Civil Action")
### and the Custodial Fund

4.    On June 24, 2019, the SEC filed its Complaint in this action against LaGuardia (ECF No. 1).  In the Complaint, the SEC alleges that, between at least 2013 and May 2017, LaGuardia, through the investment adviser L-R Managers, LLC ("L-R Managers"), executed a scheme to defraud the Relief Defendants and their investors.  Between 2013 and 2015, LaGuardia raised at least $6 million from fewer than a dozen investors for investments in the Relief Defendants.  LaGuardia misappropriated approximately $2.62 million from the Relief Defendants and then concealed part of this misappropriation by directing that the misappropriated funds be recorded as a promissory note and receivable "due from" L-R Managers to the Relief Defendants.

5.    On July 21, 2021, the SEC filed an amended complaint (the "Amended Complaint"), naming the Relief Defendants and seeking an Order transferring the Custodial Fund, in which the Relief Defendants claimed an interest, to the Court's CRIS account. ( ECF No. 48).

6.    By Order entered July 5, 2022, the Court directed NTC to liquidate the assets that it held in custody and transfer the funds, less a reserve for tax liabilities, to the CRIS Account. (ECF No. 78, the "July Order").  Pursuant to the July Order, NTC has transferred approximately $876,700 to the CRIS Account, comprising the Custodial Fund.  (*See* ECF runner entries, Sept. 22, 2022). [1]

---

[1] In addition to the approximately $868,000 in transfers reflected on the docket, on or about August 25, 2023, NTC transferred to the CRIS Account approximately $8,700 in custodial assets liquidated in The Federal Republic of Nigeria.

7.      Also by the July Order, the Court appointed Lain, Faulkner and Co., P.C. as the Distribution Agent, to formulate and implement a distribution plan in consultation with the SEC staff, to be approved by this Court; appointed Lain, Faulkner and Co., P.C. as the Tax Administrator for the Distribution Funds (the "Tax Administrator") pursuant to Section 468B(g) of the Internal Revenue Code, 26 U.S. C. §468B(g) and related regulations; and directed NTC, the Respondents, and Northern Trust Corporation, collectively, to pay all fees and expenses of the Distribution Agent and the Tax Administrator.  ECF No. 78.

8.      On August 30, 2023, the Court entered final judgment against LaGuardia.  ECF No. 106.  The final judgment, in relevant part, ordered LaGuardia to disgorge $590,424.00 and to pay prejudgment interest of $141,566.55, but deemed LaGuardia's obligation to pay satisfied by the restitution and forfeiture ordered in the related criminal proceeding, *U.S. v. LaGuardia*, 19-cr-0893 (LAK).

### *The Related Administrative Proceeding*

9.      On September 18, 2020, the SEC issued, by consent, an Order Instituting Cease-and-Desist Proceedings Pursuant to Section 203(k) of the Investment Advisers Act of 1940, Making Findings, and Imposing a Cease-and-Desist Order[2] against Northern Trust Hedge Fund Services LLC and Northern Trust Global Fund Services (collectively, the "Respondents").  The Related Administrative Proceeding arose out of the Respondents' role as the fund administrators for the Relief Defendants from January 2016 through August 2017.  The SEC found that the Respondents failed to adequately escalate concerns that they identified regarding LaGuardia and L-R Managers; provided monthly statements to investors that reflected materially inflated capital account balances and returns; and did not obtain sufficient pricing support for a significant holding of the Relief Defendants that was an illiquid investment in a private company affiliated with L-R Managers.  The SEC determined that the Respondents were a cause of LaGuardia's and L-R Managers' misconduct set forth in the Civil Action and ordered the Respondents to disgorge $15,076 and pay prejudgment interest of $2,553 and a civil penalty of $150,000, for a total payment of $167,629.  The SEC further created the Fair Fund so the collected civil penalties, along with collected disgorgement and prejudgment interest, could be distributed to harmed investors.  The Respondents paid in full.

10.     By Order dated November 14, 2022, the SEC approved a plan of distribution for the Fair Fund and directed the SEC staff to transfer the Fair Fund, net any investment costs, to the CRIS Account for distribution to harmed investors in accordance with a distribution plan to be approved by this Court (the "Fair Fund Order").

11.     Pursuant to the Fair Fund Order, on December 15, 2022, the SEC transferred $169,711.55 to the CRIS Account.  *See* ECF docket entry, January 31, 2023.

---

[2] *Northern Trust Hedge Fund Services LLC, et al.*, Admin. Proc. No. 3-20030 (Sept. 18, 2020) (the "Related Administrative Proceeding").

*The Custodial Fund and the Fair Fund*

12.     The CRIS Account currently holds over $1 million in an interest-bearing account, comprised of the Custodial Fund, the Fair Fund, and accrued interest.  Any additional funds directed to the Distribution Funds by Court order or otherwise, plus accrued interest, will be added to, and become a part of, the Distribution Funds.

## III.    DEFINITIONS

As used in this Plan, the following definitions will apply:

13.     **"Administrative Costs"** shall mean any tax obligations of the Custodial Fund or the Fair Fund, as well as any investment costs of the Distribution Funds.

14.     **"Custodial Amount"** shall mean the value of a Custodial Claimant's holdings in the custody fund held by NTC as custodian for the Relief Defendants as of September 30, 2016, as reflected on NTC's books and records.

15.     **"Custodial Claimant"** shall mean a Person, or their lawful successors, identified by the Distribution Agent as a client of L-R Managers whose funds were held by NTC as custodian for the Relief Defendants as of September 30, 2016, as reflected on NTC's books and records.

16.     **"Custodial Fund"** shall mean the funds transferred, or in the process of being transferred, to the CRIS Account by NTC as custodian for the Relief Defendants pursuant to the July Order.  Interest accrued on the Custodial Fund shall be added to, and become a part of, the Custodial Fund.

17.     **"Custodial Fund Plan of Allocation"** means the methodology by which a Custodial Claimant's interest in the Custodial Fund, and Distribution Payments to Payees from the Custodial Fund, will be determined.  The Custodial Fund Plan of Allocation is attached as Exhibit A.

18.     "**Distribution Payment**" means a payment from the Custodial Fund and/or the Fair Fund to a Payee in accordance with this Plan.

19.     **"Eligible Custodial Claimant"** means a Custodial Claimant whose Custodial Amount is greater than $0.00 and who is not an Excluded Party or an Unresponsive Claimant.

20.     **"Eligible Fair Fund Claimant"** means a Preliminary Claimant who suffered a loss caused by Defendant's misappropriation of funds from the Relief Defendants and who is not an Excluded Party or an Unresponsive Claimant.

21.     **"Equal Recovery Ratio"** means the sum of the Recoveries for all Eligible Fair Fund Claimants plus the amount of the Net Available Fair Fund, divided by the sum of the Investments for all Eligible Fair Fund Claimants.

4

22.     **"Excluded Party"** shall mean: (a) the Defendant, Respondent (defined above), or Relief Defendants; (b) persons who served as officers or directors of the Relief Defendants, and/or Respondent during the Relevant Period; (c) nominees, assigns, heirs, distributees, spouses, parents, children, or controlled entities of the entities included in 21(a); (d) the Distribution Agent, its employees, and those Persons assisting the Distribution Agent in its role as the Distribution Agent; and (e) any purchaser or assignee of another Person's eligibility to obtain a recovery from the Fair Fund or Custodial Fund for value; provided, however, that this provision shall not be construed to exclude those Persons who obtained eligibility by gift, inheritance, or devise.

23.     **"Fair Fund"** means the fund created by the SEC in the Related Administrative Proceeding pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002 and transferred to the CRIS Account pursuant to the Fair Fund Order. Accrued interest shall be added to, and become a part of, the Fair Fund.

24.     **"Fair Fund Plan of Allocation"** means the methodology by which the Distribution Payment from the Fair Fund to Payees will be calculated. The Fair Fund Plan of Allocation is attached as Exhibit B.

25.     **"Final Determination Notice"** means the written notice sent by the Distribution Agent to (a) any Custodial Claimant who timely submitted a written dispute of his, her, or its Custodial Amount, notifying the Custodial Claimant of its resolution of the dispute; (b) any Preliminary Claimant who timely submitted a written dispute of his, her, or its calculated Investment and/or Recovery, notifying the Preliminary Claimant of its resolution of the dispute; and (c) those Custodial Claimants and/or Preliminary Claimants who have not responded to the Plan Notice as described in paragraph 32, and for whom the Distribution Agent has contact information, notifying the Custodial Claimant or Preliminary Claimant that he, she, or it has been deemed an Unresponsive Claimant. The Final Determination Notice will constitute the Distribution Agent's final ruling regarding the status of the claim.

26.     **"Investment"** shall mean the Preliminary Claimant's aggregate out-of-pocket investment with the Relief Defendants during the Relevant Period, exclusive of any interest, dividend, or paper profit.

27.     **"Net Available Fair Fund"** means the Fair Fund less Administrative Costs.

28.     **"Net Available Custodial Fund"** means the Custodial Fund less Administrative Costs.

29.     **"Northern Trust"** means (collectively) NTC, the Respondents, and Northern Trust Corporation.

30.     **"Payee"** means an Eligible Custodial Claimant or Eligible Fair Fund Claimant whose aggregate distribution amount from the Distribution Funds is equal to or greater than

$10.00, as calculated in accordance with, as appropriate, the Custodial Plan of Allocation and/or the Fair Fund Plan of Allocation, and who is determined to receive a Distribution Payment.

31.     "**Person**" means natural individuals as well as legal entities such as corporations, partnerships, or limited liability companies.

32.     "**Plan Notice**" means a written notice from the Distribution Agent to each Preliminary Claimant regarding the Court's approval of the Plan, including, as appropriate: a statement characterizing the distribution; a link to the approved Plan and case information posted on the SEC's website and instructions for requesting a copy of the Plan from the Distribution Agent; specification of any information needed from the Custodial Claimant and/or Preliminary Claimant to prevent him, her, or it from being deemed an Unresponsive Claimant, including completed tax forms and payment information; the Custodial Claimant's and/or Preliminary Claimant's preliminary Custodial Amount and/or Investment and Recovery, and, if the claimant may be eligible for a payment from both of the Distribution Funds, note that the reflected Recovery will be reduced by the amount of any Distribution Payment from the Custodial Fund; a brief summary of the procedure for the distribution as set forth in the Plan; and the name and contact information for the Distribution Agent as a resource for additional information or to contact with questions regarding the distribution.

33.     "**Preliminary Claimant**" means a Person, or their lawful successors, identified by the Distribution Agent based on its review and analysis of applicable records obtained by the SEC during its investigation and litigation of this matter, NTC books and records, and other information obtained by the Distribution Agent, who held investments in the Relief Defendants during the Relevant Period, and who may have suffered losses caused by the Defendant's misappropriation of funds from the Relief Defendants.

34.     "**Recovery"** shall mean the aggregate amount of the Investment recovered by the Preliminary Claimant, including Custodial Fund Distribution Payments, redemptions, periodic withdrawals, interest or dividend payments, distribution(s), settlements, or otherwise.

35.     "**Relevant Period**" is from January 1, 2016, through August 31, 2017, inclusive.

36.     "**Unresponsive Claimant**" means a Custodial Claimant and/or a Preliminary Claimant whose address the Distribution Agent has not been able to verify and/or who does not timely respond to the Distribution Agent's attempts to obtain information, including any information sought in the Plan Notice.  Unresponsive Claimants will not be eligible for a distribution under the Plan.

## IV.     TAX COMPLIANCE

37.     The Tax Administrator shall handle the tax obligations of the Distribution Funds. Pursuant to the July Order, Northern Trust is responsible for the payment of all fees and expenses of the Tax Administrator.

38.    The Fair Fund constitutes a Qualified Settlement Fund ("QSF") under Section 468B(g) of the Internal Revenue Code of 1986, as amended, 26 U.S.C. § 468B(g), and related regulations, 26 C.F.R. §§ 1.468B-1 through 1.468B-5.  The Tax Administrator is the administrator of such QSF for purposes of Treas. Reg. § 1.468B-2(k)(3)(I) and shall satisfy the tax-related administrative requirements imposed by Treas. Reg. § 1.468B-2, including, but not limited to:

    (a)    Obtaining a taxpayer identification number;

    (b)    Requesting funds necessary for the timely payment of all applicable taxes, the payment of taxes for which the Tax Administrator has received funds, and the filing of applicable returns; and

    (c)    Fulfilling any information reporting or withholding requirements imposed on distributions from the Fair Fund.

39.    The Custodial Fund will be treated as part of the QSF for tax reporting purposes.

## V.    DISTRIBUTION AGENT

40.    The Distribution Agent will be responsible for administering the Distribution Funds in accordance with the Plan.  This will include, among other things, taking reasonable steps to obtain accurate mailing information for Custodial Claimants and Preliminary Claimants; providing resources by which Preliminary Claimants and Custodial Claimants can obtain, at no cost, prompt responses to inquiries regarding the Plan; disseminating the Plan Notice and monitoring responses; disseminating the correspondence accompanying Distribution Payments; preparing accountings; researching contact information and addresses; ensuring compliance with income tax reporting requirements, including but not limited to Foreign Account Tax Compliance Act (FATCA); working with the SEC to disburse the Custodial Fund and the Fair Fund in accordance with this Plan, as ordered by the Court; and researching and reconciling errors, and reissuing payments, when possible.  Pursuant to the July Order, Northern Trust is responsible for the payment of all fees and expenses of the Distribution Agent related to the distribution.

41.    To carry out the purposes of this Plan, the Distribution Agent is authorized to make and implement immaterial changes to the Plan upon agreement of the SEC staff.  If a change is deemed material by the SEC staff, Court approval is required prior to implementation by amending the Plan.

42.    The Distribution Agent may extend any procedural deadline contained in the Plan for good cause shown, if agreed upon by the SEC staff.

43.    The Distribution Agent is entitled to rely on all outstanding rules of law and Court orders.

44.     The Distribution Agent is authorized to enter into agreements with third-parties as may be appropriate or necessary in the administration of the Distribution Funds, provided such third-parties are not excluded pursuant to other provisions of this Plan.  In connection with such agreements, the third-parties shall be deemed agents of the Distribution Agent under this Plan.

45.     The Distribution Agent may be removed at any time by the Court and replaced with a successor.  In the event the Distribution Agent decides to resign, it will first give written notice to the SEC staff and the Court of such intention, and such resignation will not be effective until the Court has appointed a successor.  The Distribution Agent will then follow such instructions as such successor or the Court provides in turning over management of the Distribution Funds.

## VI.     PLAN PROCEDURES THROUGH THE CREATION OF PAYMENT FILES

<u>Specification of Custodial Claimants and Preliminary Claimants</u>

46.     Using information obtained by the SEC during its investigation and litigation of this matter, NTC books and records, and other information obtained by the Distribution Agent, the Distribution Agent has identified the Custodial Claimants and the Preliminary Claimants. Custodial Claimants are limited to clients of L-R Managers whose funds were held by NTC as custodian for the Relief Defendants as of September 30, 2016, as reflected on NTC's books and records.  Preliminary Claimants are limited to those Persons who held investments in the Relief Defendants during the Relevant Period and who may have suffered losses caused by the Defendant's misappropriation of funds from the Relief Defendants.

<u>Procedures for Locating and Notifying Custodial Claimants and Preliminary Claimants</u>

47.     Within thirty (30) days of Court approval of the Plan, the Distribution Agent will:

(a)     Establish a secure method by which Custodial Claimants and Preliminary Claimants may securely submit information requested by the Plan Notice or otherwise;

(b)     Provide on all communications to Custodial Claimants and Preliminary Claimants a number at which Custodial Claimants and/or Preliminary Claimants can leave a message to be contacted in this case, and designate one or more persons to promptly contact, by telephone any Custodial Claimant and Preliminary Claimant that requests telephonic contact;

(c)     Establish and maintain a traditional mailing address and an email address, both of which will be listed on all correspondence from the Distribution Agent to Custodial Claimants and Preliminary Claimants and provided to the SEC, along with the telephone number, to include on the SEC webpage for this matter, https://www.sec.gov/enforcement/information-for-harmed-investors/donald-s-laguardia .

(d)     Establish and maintain a case specific database of all Custodial Claimants and Preliminary Claimants based upon information provided to and obtained by the Distribution Agent, including the last known physical and email addresses.

(e)     Run a National Change of Address search to retrieve updated addresses for all records in the database, thereby ensuring the (U.S.) mailing information for Custodial Claimants and Preliminary Claimants is up-to-date; and

(f)     Send a Plan Notice to each Custodial Claimant's and Preliminary Claimant's last known email address (if known) and/or mailing address.

48.     The SEC staff retains the right to review and approve any communication with Custodial Claimants and Preliminary Claimants or other Persons related to the administration of this Plan, and any scripts used in connection with such communications.

<u>Undeliverable Mail</u>

49.     The Distribution Agent will attempt to locate any Custodial Claimant or Preliminary Claimant whose mailing is returned as undeliverable by the U.S. Postal Service or otherwise, including through an advanced address search using commercially available resources, if feasible, and will document all such efforts.  If another address is obtained, the Distribution Agent will then resend it the Custodial Claimant's or Preliminary Claimant's new address within fifteen (15) days of receipt of the returned mail.  If the mailing is returned again, and the Distribution Agent, despite best practicable efforts, is unable to find the Custodial Claimant's or Preliminary Claimant's correct address, the Distribution Agent, in its discretion, may deem such Custodial Claimant or Preliminary Claimant an Unresponsive Claimant.

50.     The Distribution Agent, with SEC staff approval, may engage a third-party search firm to conduct more rigorous searches for Persons whose mailings are returned as undeliverable.

51.     Any Custodial Claimant or Preliminary Claimant who relocates or otherwise changes contact information after receipt of the Plan Notice must promptly communicate any change in address or contact information to the Distribution Agent.

Procedures to Request Plan Notice

52.     Any Person who does not receive a Plan Notice as described in paragraph 32, but who is aware of this Plan (e.g., through other Custodial Claimants or Preliminary Claimants or on www.sec.gov) and believes they should be included as a Custodial Claimant and/or Preliminary Claimant should contact the Distribution Agent within forty-five (45) days from the Court's approval of the Plan to establish that they should be considered a Custodial Claimant and/or a Preliminary Claimant.  The Distribution Agent will send the Person a Plan Notice within fifteen (15) days of receiving the Person's documentation if the Distribution Agent determines that the Person should have received a Plan Notice.

Failure to Respond to Plan Notice

53.     If a Custodial Claimant or a Preliminary Claimant is requested to respond and fails to respond within the deadline set in the Plan Notice sent to that Custodial Claimant or Preliminary Claimant, the Distribution Agent will make no fewer than two (2) attempts to contact the Preliminary Claimant by telephone or email, or if no success, by correspondence to the last known address.  The second attempt will in no event take place more than forty-five (45) days from the initial mailing of the Plan Notice.  If a Custodial Claimant or Preliminary Claimant fails to respond to the Distribution Agent's contact attempts as described in this paragraph, the Distribution Agent, in its discretion, may deem such Custodial Claimant or Preliminary Claimant an Unresponsive Claimant.

Distribution Methodology

54.     The Distribution Agent will calculate each Custodial Claimant's Custodial Amount and Distribution Payment, and each Preliminary Claimant's Distribution Payment, in accordance with the Plan, including the applicable Plan of Allocation attached as Exhibits A and B.  All Custodial Claimants whose Custodial Amount is greater than $0.00 and who are not Excluded Parties or Unresponsive Claimants will be deemed Eligible Custodial Claimants.  All Preliminary Claimants who suffered a loss caused by Defendant's misappropriation of funds from the Relief Defendants and who are not Excluded Parties or Unresponsive Claimants will be deemed Eligible Fair Fund Claimants.  All Eligible Custodial Claimants and Eligible Fair Fund Claimants who are determined to receive a Distribution Payment will be deemed Payees.

55.     The Distribution Agent will calculate the Distribution Payments to Custodial Fund Payees pursuant to Exhibit A before calculating Preliminary Claimant Recoveries and determining Fair Fund Distribution Payments under Exhibit B.

Custodial Amount and Investment/Recovery Disputes

56.     The Distribution Agent may consider disputes of a Custodial Claimant's Custodial Amount determination and/or a Preliminary Claimant's Investment or Recovery calculation if notice of the dispute is presented in writing, along with supporting documentation, to the Distribution Agent within sixty (60) days of the last mailing of the Plan

Notice.  The Distribution Agent will investigate the dispute, and such investigation will include a review of the written dispute as well as any supporting documentation.

Final Determination Notices

57.     Within one hundred fifty (150) days of the initial mailing of the Plan Notices, the Distribution Agent will send a Final Determination Notice to (a) any Custodial Claimant and/or Preliminary Claimant who timely submitted a written dispute as described in paragraph 56, notifying the Custodial Claimant and/or Preliminary Claimant of its resolution of the dispute; and (b) those Custodial Claimants and/or Preliminary Claimants who have not responded to the Plan Notice, as described in paragraph 32, and for whom the Distribution Agent has what appears to be valid contact information, notifying the Custodial Claimant and/or Preliminary Claimant that he, she, or it has been deemed an Unresponsive Claimant.

Establishment of a Reserve

58.     Before determining the amount of funds available for distribution and calculating each Payee's Distribution Payment, the Distribution Agent, in conjunction with the Tax Administrator, will establish for each of the Custodial Fund and the Fair Fund a reserve to pay Administrative Costs (collectively, the "Reserve").

59.     After all Distribution Payments are made and Administrative Costs paid, any remaining amounts in the Reserve will become part of the Residual described in paragraph 75 below.

Preparation of the Payment File

60.     Within thirty (30) days of the mailing of the Final Determination Notice, the Distribution Agent will compile and send to the SEC staff two lists, including, respectively, the Payee information for each of the Custodial Fund and the Fair Fund (the "Custodial Payee List" and the "Fair Fund Payee List," respectively, and collectively, the "Payee Lists"); and including on the Payee Lists for each Payee the name, address, tax identification number (as applicable), payment information (including, for electronic payments, as appropriate, SWIFT codes, bank codes, and account numbers); and final Custodial Amount or Investment and Recovery, as appropriate; the calculated Distribution Payment; any federal or local tax withholding, and the amount of the Distribution Payment for each Payees.  The Distribution Agent will also provide a Declaration to the SEC staff in a form acceptable to the SEC staff that will, among other things, (a) represent that each of the Payee Lists was compiled in accordance with the approved Plan, is accurate as to the information contained therein, including Payees' names, addresses, Custodial Amounts and/or Investments and Recoveries, tax withholding amounts, and amounts of their Distribution Payment, and provides all information necessary to make a payment to each Payee; (b) sets forth the process by which the Payees and Distribution Payments were determined; (c) states the number of Payees compensated on each Payee List; (d) states the percentage of the Custodial Amount and/or the Investment being compensated by the Custodial Fund and the Fair Fund, respectively;  and (e) states the total amount of the Custodial Fund and the Fair Fund being distributed.

11

61.    Upon the SEC staff's receipt, review, and acceptance of the Payee Lists and the Declaration from the Distribution Agent, the SEC will petition the Court for an Order directing the SEC to distribute the Net Available Custodial Fund and the Net Available Fair Fund in accordance the Plan.

<u>Payment of Taxes After the Transfer of the Distribution Funds to the SEC</u>

62.    Upon the transfer of the Distribution Funds to the SEC, the Tax Administrator shall, at such times as the Tax Administrator deems necessary to fulfill the tax obligations of the Distribution Funds, submit a request to the SEC's counsel of record for payment from the Reserves of any tax obligations of the Distribution Funds.  The SEC is authorized to approve and arrange payment of all tax obligations owed by the Distribution Funds directly from the Reserve without further approval of this Court.  All payments for tax obligations shall be reported to the Court in a final accounting.

## VII.    PLAN PROCEDURES – DISTRIBUTION PAYMENTS

63.    Upon Court Order, the SEC will cause checks or electronic payments to issue from the U.S. Treasury pursuant to the Payee Lists and in accordance with the Plan.

64.    All checks will bear a stale date of three hundred sixty (360) days from the date of issuance.  Checks that are not negotiated by the stale date will be voided, and the U.S. Treasury will be instructed to stop payment on those checks.  A Payee's claim will be extinguished if he, she, or it fails to negotiate their check by the stale date, and the funds will remain in the Distribution Funds, except as provided in paragraph 68.

65.    All Distribution Payments, either on their face or in the proceeding or accompanying mailing will clearly indicate that the money is being distributed from Distribution Funds established by the Court to compensate investors for harm caused by securities law violations.

<u>Post Distribution; Handing of Returned or Uncashed Checks; and Reissues</u>

66.    The Distribution Agent shall use its best efforts to make use of commercially available resources and other reasonably appropriate means to locate all Payees whose checks are returned as "undeliverable."  If new address information becomes available, the Distribution Agent will ask the SEC, in writing by secure communication, to repackage the distribution check and send it to the new address.  If new address information is not available after a diligent search (and in no event no later than three hundred sixty (360) days after the initial mailing of the original check) or if the distribution check is returned again, the check shall be voided and the Distribution Agent shall ask the SEC to instruct the issuing financial institution to stop payment on such check.  If the Distribution Agent is unable to find a Payee's correct address, the Distribution Agent, in its discretion and in consultation with the SEC staff, may remove such Payee from the distribution and the allocated Distribution Payment will remain in the appropriate Distribution Fund for distribution, if feasible, to the remaining Payees.

67.     The Distribution Agent shall use its best efforts to make use of commercially available resources and other reasonably appropriate means to locate all Payees whose electronic payments do not go through. If the Distribution Agent can obtain new information, the Distribution Agent will ask the SEC, in writing sent by secure communication, to re-send the payment, if and as appropriate.  If new payment information is not available after a diligent search, the Distribution Agent, in its discretion and in consultation with the SEC, may remove such Payee from the distribution and the allocated Distribution Payment will remain in the Custodial Fund for distribution, if feasible, to the remaining Payees.

68.     The Distribution Agent will request that the SEC reissue checks or electronic payments to Payees upon the receipt of a valid, written request from the Payee if prior to the initial stale date.  In cases where a Payee is unable to endorse a Distribution Payment check as written (*e.g.*, name changes, IRA custodian changes, or recipient is deceased) and the Payee or a lawful representative requests the reissuance of a Distribution Payment check in a different name, the Distribution Agent will request, and must receive, documentation to support the requested change.  The Distribution Agent will review the documentation to determine the authenticity and propriety of the change request.  If, in the discretion of the Distribution Agent, such change request is properly documented, the Distribution Agent will ask the SEC, in writing sent by secure communication, to issue an appropriately redrawn Distribution Payment to the requesting party.  Reissued checks will be void one year after the date of reissuance, and in no event will a check be reissued after the stale date of the original check without good cause found by the Distribution Agent.

69.     The Distribution Agent will work with the SEC's Office of Financial Management ("OFM") and the SEC staff to maintain information about uncashed checks from the Distribution Funds and any returned items due to non-delivery, insufficient addresses, and/or other deficiencies.  The Distribution Agent, working with OFM and the SEC staff, is responsible for researching and reconciling errors and causing payments to be reissued when possible.  The Distribution Agent, working with OFM and the SEC staff, is also responsible for accounting for all payments.  The amount of all uncashed and undelivered payments will continue to be held in the appropriate Distribution Fund.

70.     At the discretion of the Distribution Agent, certain costs that were not factored into the Reserve, such as bank fees for the return of a payment, may reduce the Payee's Distribution Payment.  In such situations, the Distribution Agent will immediately notify the Tax Administrator of the reduction in the Distribution Payment.

71.     The Distribution Agent will make and document its best efforts to contact Payees to follow-up on the status of returned electronic payments and uncashed distribution checks.

72.     Prior to the issuance of payments, the Distribution Agent shall send to the Payees a communication that includes, as appropriate:  (a) a statement characterizing the distribution and specifying if the Distribution Payment is from the Custodial Fund or the Fair Fund, and if both, how much of the Distribution Payment is from the Custodial Fund and  the Fair  Fund; (b) a statement that the tax treatment of the distribution is the responsibility of each Payee and that the

Payee should consult his, her or its tax advisor for advice regarding the tax treatment of the distribution; (c) a statement that checks will be void and cannot be reissued after three hundred and sixty (360) days from the date the original check was issued with respect to the Fair Fund; (d) a tax information statement; and (e) contact information for the Distribution Agent for questions regarding the Distribution Payment.  The letter or other mailings to Payees characterizing a Distribution Payment will be submitted to the Tax Administrator and SEC staff for review and approval.

### Receipt of Additional Funds

73.     Should any additional funds be received pursuant to SEC or Court order, agreement, or otherwise, prior to the Court's discharge of the Distribution Agent, such funds will be added to the Custodial Fund or the Fair Fund, as appropriate; and distributed, if feasible, in accordance with the Plan and Court Order.

### Disposition of Undistributed Funds

74.     If funds remain following the initial distribution and payment of all Administrative Costs, the Distribution Agent, in consultation with the SEC staff, may seek subsequent distribution(s) of any remaining funds.  All subsequent distributions shall be made in a manner that is consistent with this Plan and pursuant to a Court Order.

75.     A residual within each of the Custodial Fund and the Fair Fund will be established for any amounts remaining after the final disbursement to Payees from the respective fund and the payment of all Administrative Costs (the "Residual").  The Residual may include funds from, among other things, amounts remaining in the Reserve, distribution checks that have not been cashed, checks or electronic payments that were not delivered, and tax refunds received due to the Fair Fund's overpayment of taxes or for waiver of IRS penalties.

76.     Once the Distribution Agent, in consultation with the SEC staff, deems further distribution of the Distribution Funds to investors infeasible, the Distribution Agent and the SEC, as applicable, will direct any uncashed or outstanding Distribution Payments to be voided.

### Administrative Costs

77.     All Administrative Costs of the Custodial Fund will be paid by the Custodial Fund.  All Administrative Costs of the Fair Fund will be paid by the Fair Fund.

### Fees and Expenses of the Distribution Agent and the Tax Administrator

78.     In accordance with the July Order, Northern Trust will pay all fees and expenses of the Distribution Agent and the Tax Administrator.

Filing of Reports and Accountings

79.     The Distribution Agent shall provide to the SEC staff a progress report, pursuant to and in a format to be provided by SEC staff, within forty-five (45) days of Court approval of this Plan, and shall provide additional progress reports within thirty (30) days after the end of every quarter thereafter, and a final report when its duties are completed. The SEC shall provide these reports to the Court upon request.

80.     Upon completion of all distributions to Payees and payment of all Administrative Costs pursuant to the procedures described above, the Distribution Agent, in consultation with the Tax Administrator, OFM, and the SEC staff, will submit to the SEC staff a final accounting, on a standardized form provided by the SEC staff, for submission to the Court. The Distribution Agent will also submit a report to the SEC staff containing the final distribution statistics regarding distributions to individuals and entities, and such other information requested by the SEC staff.

Wind-down and Document Retention

81.     The Distribution Agent will shut down any customer communication services established specifically for the administration of the Distribution Funds six (6) months after the Court's approval of the final accounting, or at such earlier time as the Distribution Agent determines with the concurrence of the SEC staff.

82.     The Distribution Agent will retain all materials provided by the SEC, and/or submitted by Custodial Claimants and Preliminary Claimants, in either paper or electronic form for a period of six (6) years from the date of approval of a final accounting. Materials maintained in electronic form must be accessible and readable for the duration of retention. Pursuant to the SEC staff's direction, the Distribution Agent will either turn over to the SEC or destroy all materials, including documents in any media, upon expiration of this period.

Termination of the Distribution Funds

83.     All funds remaining in the Residual that are infeasible to distribute to investors will be held by the SEC pending a final accounting. Upon completion of the final accounting, the SEC staff will file a motion with this Court to approve the final accounting, which will include a recommendation as to the final disposition of the Residual, consistent with Sections 21(d)(3), (5), and (7) and *Liu v. SEC*, 140 S. Ct. 1936 (2020).[3] If distribution of the Residual to investors is infeasible, the SEC staff may recommend the transfer of the Residual to the general fund of the U.S. Treasury subject to Section 21F(g)(3) of the Exchange Act.[4]

---

[3] 15 U.S.C. §§ 78u(d)(3), (5), and (7). Section 21(d)(7) was added to the Exchange Act by Section 6501(a) of the National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, enacted January 1, 2021. The relevant provisions of the NDAA apply "to any action or proceeding that is pending on, or commenced on or after, the date of" the NDAA's enactment. NDAA, Section 6501(b).

[4] Section 21F(g)(3) of the Exchange Act, 15 U.S.C. § 78u-6(g)(3), provides, in relevant part, that any monetary sanction of $200 million or less collected by the SEC in any judicial action brought by the SEC under the securities

84.     Once the SEC staff has reviewed and accepted the final accounting, the SEC will petition the Court for an order, as appropriate, approving the final accounting, discharging the Distribution Agent, disposing of the Residual, and terminating the Distribution Funds.

85.     The Distribution Funds will be eligible for termination and the Distribution Agent will be eligible for discharge after all the following have occurred:

      a.   A final report and accounting has been submitted to and approved by the Court;

      b.   All Administrative Costs have been paid; and

      c.   The Court has approved the SEC staff's recommendation as to the final disposition of the Residual consistent with Sections 21(d)(3), (5), and (7) and *Liu v. SEC*, 140 S. Ct. 1936 (2020).

86.     Once the Distribution Funds have been terminated, no further claims will be allowed, and no additional payments will be made whatsoever.

---

laws that is not added to a disgorgement fund or distribution fund or otherwise distributed to victims, plus investment income, shall be deposited or credited into the SEC Investor Protection Fund.

**Exhibit A**

**CUSTODIAL FUND PLAN OF ALLOCATION**

This Plan of Allocation is designed to return the Custodial Fund[5] to the clients of L-R Managers whose assets were held by NTC as custodian for the Relief Defendants as of September 30, 2016, as reflected in the books and records of NTC.  Investors who did not have funds held by NTC as custodian for the Relief Defendants as of September 30, 2016, as reflected in the books and records of NTC, are ineligible to recover under this Custodial Fund Plan of Allocation.  Based on information obtained by the SEC during its investigation and litigation of this matter, and other information obtained by the Distribution Agent, the Distribution Agent has identified those clients of L-R Managers whose funds were held by NTC as custodian for the Relief Defendants as of September 30, 2016, as reflected in the books and records of NTC (the "Custodial Claimants").

The Distribution Agent will determine the value of each Custodial Claimant's holdings in the custody fund held by NTC as custodian for the Relief Defendants as of September 30, 2016, as reflected in the books and records of NTC ("Custodial Amount"), and Distribution Payments, as follows:

Based on the contemporaneously prepared statements, activity and banking records obtained from NTC and the SEC, the Distribution Agent will analyze each Custodial Claimant's recorded holdings and determine, for each, redemptions owed to them as of September 30, 2016, i.e., his, her, or its Custodial Amount.   The Distribution Agent will then calculate each Custodial Claimant's *pro rata* redemption percent by dividing their Custodial Amount by the aggregate Custodial Amounts of all Custodial Claimants as of September 30, 2016.  The Distribution Agent will then determine each Custodial Claimant's distribution amount by multiplying their *pro rata* redemption percent by the Net Available Custodial Fund.

Any Custodial Claimant whose Custodial Amount is greater than $0.00, and who is not an Excluded Party or an Unresponsive Claimant, will be deemed an Eligible Custodial Claimant.

**Additional Provisions**

Minimum Distribution Amount:  The Minimum Distribution Amount will be $10.00.  If an Eligible Custodial Claimant's distribution amount is less than the Minimum Distribution Amount, that Eligible Custodial Claimant will be deemed ineligible to receive a Distribution Payment and his, her, or its distribution amount will be reallocated on a *pro-rata* basis to Eligible Custodial Claimants whose distribution amounts are greater than or equal to the Minimum Distribution Amount.

Payee:  An Eligible Custodial Claimant whose distribution amount equals or exceeds the Minimum Distribution Amount will be deemed a Payee and receive a Distribution Payment

---

[5] Capitalized terms not defined in this Custodial Fund Plan of Allocation are used as defined in the Plan.

equal to his, her, or its distribution amount.  In no event will a Payee receive from the Custodial Fund more than his, her, or its Custodial Amount.

**Exhibit B**

**FAIR FUND PLAN OF ALLOCATION**

This Fair Fund Plan of Allocation is designed to compensate Persons who held investments in the Relief Defendants[6] during the period January 1, 2016 through August 31, 2017, inclusive (the "Relevant Period"), for losses caused by Defendant's misappropriation of funds from the Relief Defendants.[7]  Investors who did not hold Investments in the Relief Defendants during the Relevant Period and/or who held Investments in the Relief Defendants during the Relevant Period but did not suffer losses caused by the Defendant's misappropriation of funds from the Relief Defendants are ineligible to recover under this Plan of Allocation. Based on information obtained by the SEC during its investigation and litigation of this matter, and other information obtained by the Distribution Agent, the Distribution Agent has identified those Persons, or their lawful successors, who held Investments in the Relief Defendants during the Relevant Period and who may have suffered losses caused by Defendant's misappropriation of funds from the Relief Defendants (the "Preliminary Claimants").

The Distribution Agent will first calculate Distribution Payments to Payees from the Custodial Fund before performing calculations under this Exhibit B so that such Distribution Payments can be included in Eligible Fair Fund Claimant Recoveries.

The Distribution Agent will identify Fair Fund Payees and the amount to be distributed to each such Payee in accordance with the "rising tide" methodology:

(a)     The Distribution Agent will create a list of Eligible Fair Fund Claimants (the "Preliminary List").

(b)     For each Eligible Fair Fund Claimant on the Preliminary List, the Distribution Agent will calculate his, her, or its "Individual Recovery Ratio" as his, her, or its Recovery (including any Distribution Payment from the Custodial Fund Plan of Allocation) divided by his, her, or its Investment.

(c)     Using the Preliminary List, the Distribution Agent will calculate the "Equal Recovery Ratio" as the sum of the Recoveries for all Eligible Fair Fund Claimants plus the amount of the Net Available Fair Fund, divided by the sum of the Investments for all Eligible Fair Fund Claimants.

(d)     An Eligible Fair Fund Claimant on the Preliminary List whose Individual Recovery Ratio exceeds the Equal Recovery Ratio will be removed from the Preliminary List and deemed ineligible to receive a distribution under this Plan of Allocation.

(e)     The Distribution Agent will re-calculate the Equal Recovery Ratio for the remaining Eligible Fair Fund Claimants as in step (c) and exclude Preliminary Claimants whose Individual Recovery Ratios exceed the re-calculated Equal

---

[6] Capitalized terms not defined in the Fair Fund Plan of Allocation are used as defined in the Plan.

19

Recovery Ratio as in step (d) iteratively, until all remaining Eligible Fair Fund Claimants have Individual Recovery Ratios less than or equal to the re-calculated Equal Recovery Ratio.

(f)     The Distribution Agent will calculate the "Tentative Distribution" for each remaining Eligible Fair Fund Claimants by multiplying the final Equal Recovery Ratio by the Eligible Fair Fund Claimant's Investment, and subtracting from that amount the Eligible Fair Fund Claimant's Recovery.

(g)     An Eligible Fair Fund Claimant whose Tentative Distribution is less than the "Minimum Distribution Amount" of $10.00 will be removed from the Preliminary List be and deemed ineligible to receive a distribution and steps (e) and (f) will be repeated until each remaining Eligible Fair Fund Claimant's Tentative Distribution is equal to or greater than the Minimum Distribution Amount.

(h)     The Eligible Fair Fund Claimants remaining on the Preliminary List will be Payees and the respective final Tentative Distribution amounts will be the Distribution Payments directed to them.

**Additional Provisions**

Subsequent Distributions: In the event of subsequent distributions, the steps in the rising tide calculations in paragraphs (a) through (h) set forth above will be repeated. Any Eligible Fair Fund Claimants who were removed from the Preliminary List in a previous distribution and deemed ineligible pursuant to paragraphs (d) or (g) above will be reconsidered in any subsequent distribution. The amount of any Distribution Payment paid to an Eligible Fair Fund Claimant in a previous distribution will be considered a Recovery for the Eligible Fair Fund Claimant in each subsequent distribution.

Reasonable Interest:  At the final distribution, as determined by the Distribution Agent, if all Eligible Fair Fund Claimants have achieved an Individual Recovery Ratio of 100% and sufficient funds remain, the Distribution Agent, in consultation with the SEC staff, may pay Eligible Fair Fund Claimants for the time value of his, her, or its respective loss as calculated in connection with the initial distribution.  Reasonable Interest will be calculated using the Short-term Applicable Federal Rate plus three percent (3%), compounded quarterly from the end of the Relevant Period through the approximate date of the disbursement of the funds.  If there are insufficient funds to pay the full amount of Reasonable Interest calculated for each Eligible Fair Fund Claimant, each Payee will receive Reasonable Interest from the excess funds in the proportion of the Distribution Payment calculated for him, her, or it, to the aggregate Distribution Payments calculated for all other Payees.

Minimum Distribution Amount:  The Minimum Distribution Amount will be $10.00 (inclusive of Reasonable Interest, if any).  If an Eligible Fair Fund Claimant's distribution amount is less than the Minimum Distribution Amount, that Eligible Fair Fund Claimant will be deemed ineligible to receive a Distribution Payment and his, her, or its distribution amount will be reallocated on a *pro-rata* basis to Eligible Fair Fund Claimants whose distribution amounts are greater than or equal to the Minimum Distribution Amount.

20

<u>Payee</u>:  An Eligible Fair Fund Claimant whose distribution amount equals or exceeds the Minimum Distribution Amount will be deemed a Payee and receive a Distribution Payment equal to his, her, or its distribution amount.

<u>Distribution Payment Limitation</u>:    In no event will a Payee receive from the Fair Fund in any distribution more than his, her, or its loss caused by the Defendant's misappropriation of funds from the Relief Defendants, nor will the sum of the Distribution Payments through subsequent rounds, if any, exceed that loss, plus Reasonable Interest, if any.